## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

VIRGIL L. SMITH                                    CIVIL ACTION

VERSUS                                             NO.  10-409

N. BURL CAIN, WARDEN                               SECTION "F"(2)


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. It was subsequently reassigned to me.   Record Doc. No. 15.   Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Virgil L. Smith, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 21, 2002, Smith was charged by bill of information in St. Tammany Parish with one count of being, on November 17, 2000, a convicted felon in possession of a firearm in violation of La. Rev. Stat. Ann. § 14:95.1, "having previously been convicted of Forcible Rape on July 27, 1999 in Orleans Criminal District Court and sentenced to 25 years."[3]   On June 21, 2004, the bill of information was amended to correct the date of the forcible rape conviction to July 27, 1979.[4]

The Louisiana First Circuit Court of Appeal summarized the facts of the case as follows:

> Detective Claude Stevens of the Slidell Police Department testified that on November 17, 2000, he was traveling southbound on Carroll Road in St. Tammany Parish when he observed the defendant driving northbound in the steady rain without his headlights illuminated.  Detective Stevens turned around and followed the defendant so he could stop him to let him know that driving in the rain without his headlights illuminated was a traffic violation.  The vehicle the defendant was driving had an Arizona license plate.  Detective Stevens ran the license plate number through National Crime Information Center (NCIC), which advised him that it was a stolen vehicle.  When backup arrived, Detective Stevens turned on his emergency lights and had the defendant pull over the vehicle to the side of

---

[2]Rec. Doc. No. 2, Petition for Habeas Corpus.

[3]St. Rec. Vol. 2 of 3, Felony Bill of Information dated Nov. 21, 2002.  (Emphasis added).

[4]Id., amended on June 21, 2004 by handwritten notation signed by 22nd Judicial District Assistant District Attorney Scott Gardner.

the road.  Detective Stevens, with his weapon drawn, ordered the defendant
to exit the vehicle and come towards the patrol unit.  Detective Stevens
handcuffed the defendant and read him his <u>Miranda</u> rights.  The passenger,
who was later identified as the defendant's wife, Lorraine, was also ordered
out of the vehicle and handcuffed.

The defendant and Lorraine told Detective Stevens that the vehicle
belonged to Lorraine's father who lived in Arizona, and that they left
Arizona without permission to take the vehicle out of state.  Detective
Stevens asked the defendant if there were any weapons in the vehicle.  The
defendant told him that his brother's gun was under the front seat.
Detective Stevens searched the vehicle and found a Lorcin L380 handgun
under the driver's seat.  Detective Stevens unloaded the weapon and
secured it in his police unit.

Once Detective Stevens was back at the police station, he "booked"
the defendant for possession of stolen property and after checking the
defendant's criminal history, he discovered the defendant had a prior
conviction for forcible rape.  Based on this information, Detective Stevens
also booked the defendant for the crime of a convicted felon in possession
of a firearm.

Detective Stevens contacted Lorraine's father, John, and verified that
the vehicle had previously belonged to him.  However, according to John,
Allstate was the current owner of the vehicle because the vehicle had been
gone for an extended period of time.  Detective Stevens had the vehicle
towed and inventoried.

Felix Indest, a supervisor with the Probation and Parole Office of the
Department of Corrections, testified that he researched the release date for
the defendant's forcible rape conviction in Orleans Parish.  Mr. Indest
testified that, based on a docket master printed from Orleans Parish, the
defendant was convicted of forcible rape on May 22, 1979 and, based on
a transfer record, the release date was July 26, 1995.  While the defendant
received a twenty-five year sentence for this conviction, he served only
sixteen years because of his good time release.  The defendant did not
testify at trial.

State Record Volume 1 of 3, Louisiana First Circuit Court of Appeal Opinion, 2005-KA-0164, at pp. 2-4, November 4, 2005; State v. Smith, 913 So. 2d 895 (La. App. 1st Cir. 2005) (disposition without opinion).

Smith was tried before a jury on June 21 and 22, 2004.[5]  The jury returned a verdict of guilty as charged.[6]  On August 26, 2004, the state trial court sentenced Smith to 15 years in prison without benefit of probation, parole or suspension of sentence.[7]

On appeal, Smith raised a single assignment of error that the trial court erred in denying his pretrial motions to suppress evidence.[8]  On November 4, 2005, the Louisiana First Circuit Court of Appeal affirmed the conviction, finding the claim to be without merit.[9]  The court also conducted an errors patent review and determined that the trial court erred by sentencing defendant without waiting 24 hours after denial of his motion for a new trial and that defendant had not waived this time period.  However, since

---

[5]St. Rec. Vol. 2 of 3, Trial Minutes, 6/21/04; Trial Minutes, 6/22/04; St. Rec. Vol. 3 of 3, Trial Transcript, 6/21/04; Trial Transcript, 6/22/04.

[6]St. Rec. Vol. 2 of 3, Trial Minutes, 6/21/04; Trial Minutes, 6/22/04; Jury Verdict, 6/22/04; St. Rec. Vol. 3 of 3, Trial Transcript, p. 122, 6/22/04.

[7]St. Rec. Vol. 2 of 3, Sentencing Minutes, 8/26/04; St. Rec. Vol. 3 of 3, Sentencing Transcript, 8/26/04.

[8]St. Rec. Vol. 1 of 3, 1st Cir. Opinion, 2005-KA-0164, p. 4, 11/4/05.

[9]Id., at p. 10; State v. Smith, 913 So. 2d at 895.

defendant had not challenged the sentence, the court found that the error was harmless and did not require a remand for re-sentencing.[10]

Smith sought supervisory review of the First Circuit's ruling by the Louisiana Supreme Court, which denied the writ application on December 15, 2006, without stated reasons.[11]  His conviction and sentence therefore became final 90 days later, on March 15, 2007, when he did not file a writ application with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir. 1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. R. 13(1).

On October 26, 2007, Smith submitted an application for post-conviction relief to the state trial court in which he asserted ten grounds for relief:[12] (1) "The trial court erred in not proving other crimes evidence to support charges of convicted felon in possession of a firearm." (2) The district attorney "used an illegal charge to prove . . . that petitioner was a convicted felon of forcible rape." (3) The trial court had no jurisdiction over the charge because it was never timely instituted. (4) The evidence was insufficient to

---

[10]Id. at pp. 10-11.

[11]State v. Smith, 944 So. 2d 1271 (La. 2006); see also, State ex rel. Smith v. State, 944 So.2d 895 (La. 2006).  The State failed to provide the Court with a copy of the Louisiana Supreme Court records in spite of having been ordered to do so.  Nevertheless, the record is sufficient to proceed.

[12]St. Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, 11/13/07 (signed 10/26/07).

support the conviction. (5) The trial court "gave the jury an acquit first, sequential jury instruction that violates petitioner's due process rights." (6) The state failed to prove that the five-year cleansing period had not elapsed. (7) Petitioner's counsel was ineffective at the penalty phase of the trial for failing to investigate and present significant mitigating evidence. (8) The state instituted prosecution on a dismissed charge. (9) Counsel failed effectively to impeach a witness with the witness's prior testimony from the case. (10) "Notes, for this Hon. Court to consider in vindictive claim No. #10," alleging that the district attorney prosecuted him vindictively.

The state trial court denied relief on November 28, 2007, finding, as to numbered claims 1, 2, 3, 4, 5, 6, 8 and 9, that they should be denied because Smith failed to raise each claim on appeal.[13]  The trial court also ruled, without specific reasons, that claims numbered 1, 2, 6, 8 and 10 were also without merit.  As to claim number 3, the court found that the claim was meritless because the charge was timely instituted.  The court found that claim number 4 was meritless because the court had heard the evidence, which was sufficient to support a conviction.  As to claim number 5, the court found that the claim was meritless because the jury was properly instructed concerning the law.  As to the two claims of ineffective assistance of counsel numbered 7 and 9, the court held that

---

[13]St. Rec. Vol. 1 of 3, Trial Court Order, 10/28/07.

each claim was meritless because Smith had failed to show a reasonable probability that, but for counsel's alleged errors, the results would have been different.

Smith sought review in the Louisiana First Circuit.[14]   His writ application was denied on April 16, 2008, relying on the court's prior denial of the same claims under writ application number 2008-KW-1355.[15]   On February 2, 2009, under that court's docket number 2008-KW-2026, the appellate court again denied relief on Smith's post-conviction claims and clarified its prior rulings noting in its denial that Smith had previously filed a writ application, docketed as 2007 KW 1355, concerning the same conviction for being a felon in possession of a firearm in the trial court's docket number 3571<u>33</u>.[16]   The court further noted that the prior writ application and the ruling on the post-conviction claims in 2007-KW-1355 had incorrectly listed the trial court's docket number as 3571<u>34</u> (which was another criminal case against Smith in the same trial court).   The First Circuit stated that, in its opinion issued in 2007-KW-1355, although not stated, it had addressed the merits of the arguments raised by petitioner "and found that

---

[14]The State failed to provide a copy of the writ application.

[15]St. Rec. Vol. 1 of 3, 1st Cir. Order, 2008-KW-0127, 4/16/08.

[16]St. Rec. Vol. 1 of 3, 1st Cir. Order, 2008-KW-2026, 2/2/09.

the trial court did not err in denying post conviction relief relative to docket number 357133, as the claims were without merit."[17]

The Louisiana Supreme Court subsequently denied Smith's related writ application without stated reasons on December 18, 2009.[18]

II.    FEDERAL HABEAS PETITION

On March 1, 2010, the clerk of this court filed Smith's petition for federal habeas corpus relief in which he asserted ten grounds for relief:[19] (1) "The trial court erred in not proving other crimes evidence to support" the charge of being a felon in possession of a firearm. (2) The prosecutor used an illegal charge to prove that petitioner was a felon previously convicted of forcible rape. (3) The trial court had no jurisdiction over the charge because it was never timely instituted. (4) The State presented insufficient evidence to support his conviction of being a previously convicted felon in possession of a firearm. (5) The trial court erred in instructing the jury on felon in possession where the prior conviction was not proven at trial. (6) The "State failed to prove that the five year cleaning (sic) [period] had not elapsed" on his past conviction. (7) His counsel was

---

[17]Id.

[18]State ex rel. Smith v. State, 23 So.2d 938 (La. 2009); St. Rec. Vol. 1 of 3, La. S. Ct. Order, 2009-KH-0565, 12/18/09; La. S. Ct. Letter, 2009-KH-565, 3/13/09 (showing postmark 2/18/09).  The State failed to provide the Court with a copy of the Louisiana Supreme Court records.

[19]Rec. Doc. No. 2.

ineffective at the penalty phase "for failing to investigate and present significant evidence in mitigation" and "when he did not investigat (sic) if this charge was ever re-instituted by the state." (8) His rights to due process and a fair trial were denied because the "prosecution [was] instituted on a dismissed charge" in that "the prosecutor . . . had five years to institute" the charge and failed to do so. (9) His trial counsel was ineffective for failing to use a detective's prior testimony to impeach him. (10) He was subjected to a "vindictive" prosecution by a prosecutor whom Smith had previously sued.

The State filed an answer and memorandum in opposition to Smith's petition, in which it conceded that the petition was both timely filed and exhausted, but arguing that the claims should be dismissed because they are without merit.[20]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[20]Rec. Doc. Nos. 10, 11.

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Smith's petition, which, for reasons discussed below, is deemed filed in this federal court on February 8, 2010.[22]

The threshold questions in habeas review under the AEDPA are whether the petition is timely filed and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

Here the State concedes, and I find, that Smith's federal petition was timely filed, and his claims are exhausted. The State did not address procedural default. As outlined above, while the state trial court initially barred review of most of Smith's claims on post-conviction review pursuant to La. Code Crim. P. art. 930.4(C) for failure to raise the claims on appeal, the court also found each claim to be meritless. The Louisiana First Circuit also denied relief on the claims as meritless, and the Louisiana Supreme Court

---

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Smith's petition was filed by the clerk of this court on March 1, 2010, when pauper status was granted. Smith's signature on the petition is dated February 8, 2010. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.

acquiesced to this ruling.  For these reasons, I will not consider a procedural bar to review of Smith's claims.

## IV.   STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

11

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.   VALIDITY OF PRIOR GUILTY PLEA AND ADMISSIBILITY OF OTHER CRIMES EVIDENCE (CLAIMS NOS. 1 AND 2)

Smith alleges that the State used an illegal prior conviction to prove that he was a convicted felon.  He contends that the State could not prove that the charge was for forcible rape or if the plea to the charge was entered knowingly and voluntarily.  He raised this claim on post-conviction review, and the state courts denied relief, finding the claim meritless.

### A.   CHALLENGE TO THE PRIOR CONVICTION

28 U.S.C. § 2241(d) "gives the United States district courts jurisdiction to entertain petitions for habeas relief <u>only</u> from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989) (quoting 28 U.S.C. § 2241(c)(3)) (emphasis added); 28 U.S.C. § 2254(a).  Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies.  <u>Dickerson v. Louisiana</u>, 816 F.2d 220, 224 (5th Cir. 1987).  The United States Supreme Court has interpreted this statutory language to require that the habeas petitioner be in custody at the time the petition is filed <u>for the conviction or sentence under attack</u>.  <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394, 400-401 (2001).

Thus, to be eligible for federal habeas corpus relief, a petitioner must be "in custody" and must have exhausted his available state court remedies.  <u>Dickerson v.</u>

Louisiana, 816 F.2d 220, 224 (5th Cir. 1987).  Whether a petitioner is "in custody" is determined as of the date on which the federal habeas petition is filed.  Spencer v. Kemna, 523 U.S. 1, 7 (1998); Carafas v. LaVallee, 391 U.S. 234, 238 (1968); Port v. Heard, 764 F.2d 423, 425 (5th Cir. 1985).  When the jurisdictional prerequisite of custody is met at the time of filing, jurisdiction is not defeated by the petitioner's subsequent release from custody.  Carafas, 391 U.S. at 238; Port, 764 F.2d at 425.

As the United States Supreme Court held in Lackawanna, when a habeas petitioner is no longer serving the sentences imposed pursuant to his old convictions, he cannot bring a federal habeas action directed solely at challenging those convictions.  However, where his current Section 2254 petition can be (and has been) construed as asserting a challenge to the sentence he is currently serving, as enhanced by the allegedly invalid old conviction, he satisfies the "in custody" requirement for jurisdictional purposes.  Lackawanna, 534 U.S. at 401-02.

In Lackawanna, however, the Supreme Court also held that, although jurisdiction to consider such a claim exists, relief is generally unavailable to a state prisoner through a petition for a writ of habeas corpus, when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody.  "[W]e hold that once a state conviction is no longer open to direct or collateral attack in its own right because the defendant

failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as <u>conclusively</u> <u>valid</u>. . . .  If that conviction is later used to enhance a criminal sentence, the defendant generally may <u>not</u> challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained."   <u>Id.</u> at 403-04 (citation omitted) (emphasis added).

In <u>Lackawanna</u>, the Supreme Court recognized a single exception to this rule relating to Sixth Amendment claims of failure to appoint counsel.  No such claim is made in this case, and I am unaware of any exception to the rule that would apply to the sufficiency of the evidence claim asserted by Smith.[23]

I note that Smith challenged, among other things, the voluntariness of his 1979 guilty plea to forcible rape in a prior federal habeas corpus petition in this court, "<u>Virgil Smith v. John P. Whitley, Warden</u>," C.A. No. 93-3864"F"(6).  After an evidentiary hearing before the assigned magistrate judge, the court resolved that the plea was

---

[23]As explained by the Sixth Circuit in <u>Abdus-Samad v. Bell</u>, 420 F.3d 614, 630 (6th Cir. 2005), a three-justice plurality of the <u>Lackawanna</u> Court speculated that other exceptions to this rule of federal habeas <u>non</u>-reviewability might exist in other circumstances, including (1) where a state court, without justification, has refused to rule on a properly presented constitutional claim, and (2) where a defendant subsequently obtains compelling evidence of his actual innocence.  These circumstances do not exist here.

knowing and voluntary and dismissed the claim as meritless.[24]  The United States Fifth Circuit Court of Appeals found no basis for issuance of a certificate of probable cause to appeal that finding.[25]

For the foregoing reasons, this court will not revisit Smith's prior conviction based upon his 1979 guilty plea to forcible rape, which is "regarded as conclusively valid," Lackawanna, 534 U.S. at 403, and which has been upheld in subsequent litigation. Federal habeas relief is unavailable to Smith's challenge of the use of this old and valid conviction to support the conviction or enhance the sentence he is currently serving. Smith is not entitled to relief on this issue.

B.    "OTHER CRIMES" EVIDENCE

Smith alleges that the State failed properly to establish that he was convicted of forcible rape, because the evidence presented showed that he entered a guilty plea to sexual battery, not forcible rape.  He argues that this evidences an invalid conviction and constitutes "other crimes" evidence which denied him a fair trial and due process.

Although Smith describes this claim as challenging "other crimes" evidence, his argument actually challenges the sufficiency of the evidence to prove the nature of the prior crime, not the admissibility of the evidence.  The sufficiency of the evidence is

---

[24]Civ. Action No. 93-3864, Rec. Doc. Nos. 20, 23, 24.

[25]Id., Rec. Doc. No. 28.

16

addressed in a later section of this report.  To whatever extent Smith argues that the admission of evidence related to his prior conviction was inadmissible "other crimes" evidence under state law, this court will not review such a claim.

The admissibility of other crimes evidence or prior bad acts is addressed under La. Code Evid. art. 404(B).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992); see Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law).  States are free to implement procedures regarding the admissibility of evidence, provided that those procedures do not infringe on a constitutional guarantee. Burgett v. State of Texas, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. Lisenba v. People of the St. of Cal., 314 U.S. 219, 236-37 (1941); Swarthout, 131 S. Ct. at 861-62; Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

Claims asserting violation of due process under the Fourteenth Amendment present a mixed question of law and fact.  Dickson v. Sullivan, 849 F.2d 403, 405-06 (9th

Cir. 1988).  Under the applicable standard of review, this court therefore must determine if the state court's decision to admit the evidence is contrary to or involved an unreasonable application of Supreme Court precedent.  The due process standard requires this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient."  Swarthout, 131 S. Ct. at 861 (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).  To assess whether there has been a due process deprivation, the court must consider whether Louisiana's law provided Smith with a protected interest in not having the prior bad acts evidence admitted at his trial.  In this case, it did not.

In State v. Prieur, 277 So.2d 126 (La. 1973), the Louisiana Supreme Court held that evidence of other acts of misconduct is generally not admissible to show the defendant's bad character, but that such evidence is allowed to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is part of the subject of the present proceeding.  See also La. Code Evid. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La. 1993).  Under Louisiana law, to constitute impermissible other crimes or prior bad acts evidence, the evidence must unambiguously implicate the defendant in another crime not integrally related to the

instant offense.  State v. Edwards, 406 So.2d 1331, 1349 (La. 1981); State v. Holmes,
841 So.2d 80 (La. App. 4th Cir. 2003).

The evidence concerning Smith's prior conviction did not fit the definition of
prohibited other crimes evidence under Louisiana law.  The reference was not introduced
to impugn Smith's character or depict him as a bad man.  Instead, the evidence and
testimony was presented to establish an integral part of the very crime with which he was
charged, being a previously convicted felon in possession of a weapon.  See Robinson
v. Whitley, 2 F.3d 562, 566-67 (5th Cir. 1993) (evidence was admissible under Louisiana
law where it had independent relevance as an integral part of the crime or the sequence
of events) (citing State v. Edwards, 406 So.2d at 1350-51 and State v. Guillory, 201 La.
52, 9 So.2d 450 (La. 1942)).

Smith has not demonstrated in the instant case that the reference to his prior
conviction constituted prohibited evidence of another crime or a prior bad act which
would have rendered his trial unfair.  Instead, it was an integral part of his criminal
proceedings.  Thus, he "has no basis for any alleged due process violation" or for a denial
of a fundamentally fair trial.  Robinson, 2 F.3d at 567; Neal v. Cain, 141 F.3d 207, 214
(5th Cir. 1998).  The denial of relief on this claim was not contrary to, or an unreasonable
application of, Supreme Court precedent.  This claim is without merit.

19

## VI.   JURISDICTION /UNTIMELY CHARGE (CLAIMS NOS. 3 AND 8)

Smith alleges that the state trial court was without jurisdiction over his case, because the charge was not timely instituted.  He contends that the charge first was refused by the district attorney and was re-instituted against him three years later.

The record reflects that Smith was arrested on November 17, 2000, for possession of a stolen car and as a felon in possession of a weapon.[26]  The bill of information on the felon in possession charge was filed on November 21, 2002.[27]  Defense counsel raised this issue prior to trial in an oral motion to quash the bill.[28]  After hearing argument, the state trial court denied the motion finding the prosecution timely.[29]  Smith again raised this claim in his post-conviction application, and the state courts denied relief through the Louisiana Supreme Court finding the claim meritless.

Smith's claims that the bill of information against him was untimely filed and that the trial court lacked jurisdiction are inappropriate for habeas review.  In demonstrating deference to state courts' determination of state law, the Fifth Circuit has "emphasized that 'it is settled in this Circuit that the sufficiency of a state indictment is not a matter

---

[26]St. Rec. Vol. 1 of 3, 1st Cir. Opinion, 2005-KA-0164, pp. 2-4, 11/4/05.

[27]St. Rec. Vol. 2 of 3, Bill of Information, 11/21/02.  The State erred in arguing that the arrest and filing happened within "a few days" of each other.  See Rec. Doc. No. 11, p. 8.

[28]St. Rec. Vol. 3 of 3, Trial Transcript, p. 19, 6/21/04.

[29]Id., pp. 19-20.

for federal habeas corpus relief <u>unless</u> it can be shown that the indictment is so defective that the convicting court had no jurisdiction.'" (emphasis in original) <u>Evans v. Cain</u>, 577 F.3d 620, 624 (5th Cir.2009) (per curiam) (citing <u>Branch v. Estelle</u>, 631 F.2d 1229, 1233 (5th Cir. 1980)); <u>McKay v. Collins</u>, 12 F.3d 66, 68 (5th Cir. 1994).  Thus, a question of the state court's jurisdiction is a basis for federal habeas corpus relief only under the Due Process Clause.  <u>Id</u>. at 624 (citing <u>Lowery v. Estelle</u>, 696 F.2d 333, 337 (5th Cir. 1983)).

However, once the issue of an indictment's sufficiency has been "'squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case,'" a federal habeas court is foreclosed from reviewing "the question 'as to whether a state trial court was deprived of jurisdiction.'"  <u>Id</u>., at 624 (citations omitted); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).  "An issue may be squarely presented to and decided by the state's highest court when the petitioner presents the argument in his application for postconviction relief and the state's highest court denies that application without written order."  <u>Id</u>. at 624 (citations omitted).

Under the foregoing standards, if the highest state court has found the bill of information sufficient and jurisdiction proper under state law, a federal court does not re-address the issue.  The Louisiana Supreme Court has done so in its denial of Smith's post-conviction writ application on the merits.  Smith is not entitled to review of his claims by or relief from this federal habeas court.  <u>Evans</u>, 577 F.3d at 624.

VII.   SUFFICIENCY OF THE EVIDENCE (CLAIMS NOS. 1, 4 AND 6)

Smith argues that the evidence was insufficient to support the verdict that he was a previously convicted felon in possession of a firearm.  Specifically, he alleges that "[t]he prosecutor never prove[d] prior conviction, nor prove[d] that this was the same Smith, ever charge[d] with this charge, and because of this did prejudice him."[30]

Smith raised this claim in his post-conviction application to the state trial court, which found the evidence sufficient to support the conviction and denied the claim as meritless.  The Louisiana First Circuit reviewed the trial court decision and denied the writ application, finding the claims meritless.  The Louisiana Supreme Court agreed.

Under Jackson v. Virginia, 443 U.S. 307 (1979), the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, __

---

[30]Rec. Doc. No. 2 at ¶ 12(D) p. 4 of 13.

U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. Alexander, 775 F.2d at 598. In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir.2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In Louisiana, the offense of being a previously convicted felon in possession of a firearm is defined as follows: "It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) . . . or any crime which is defined as a sex offense in R.S. 15:541, or any crime defined as an attempt to commit one of the above-enumerated offenses under the laws of this state, . . . to possess a firearm or carry a concealed weapon."  La. Rev. Stat. Ann. § 14:95.1.  Under Sections 14:2(B)(10) and 15:541(24)(a), forcible rape is an enumerated offense within the definitions of "sex offense" and "crime of violence."

To sustain a conviction for possession of a firearm by a convicted felon at the time of Smith's offense, the State had to prove the following elements of the offense: (1) possession of a firearm, (2) prior conviction for an enumerated felony, (3) absence of the ten-year statutory limitation period, and (4) the general intent to commit the crime.  State v. Caffrey, 15 So.3d 198  (La. App. 5th Cir. 2009), writ denied, 27 So.3d 297 (La. 2010); State v. Ray, 961 So.2d 607 (La. App. 2d Cir. 2007); State v. Robert, 956 So.2d 750 (La. App. 2d Cir. 2007).  Constructive possession of a firearm occurs when the firearm is

subject to the defendant's dominion and control.  <u>State v. Law</u>, 46 So.3d 764, 770 (La. App. 2d Cir. 2010).  Constructive possession involves an element of awareness or knowledge that the firearm is there and the general intent to possess it.  <u>Id</u>. (citations omitted).

With regard to the second element, "[t]he State must prove the [prior] felony conviction and that ten years has not elapsed since the date of completion of punishment."  <u>State v. Knight</u>, 738 So.2d 1179, 1181 (La. App. 5th Cir. 1999) (citations omitted).  Louisiana law provides that the cleansing period for a felon in possession "requires a determination of a ten-year period between the defendant's date of 'completion of sentence, probation, parole or suspension of sentence' and the time of the present possessory offense."  <u>State v. Ostrom</u>, 980 So.2d 890, 895 (La. App. 2d Cir. 2008).

In addition, specific intent is not necessary for a conviction of being a previously convicted felon in possession of a firearm.  Instead, general intent is all that is required, and it may be proved through either the actual or constructive possession of a firearm.  <u>State v. Law</u>, 46 So.3d 764, 770 (La. App. 2d Cir. 2010); <u>State v. Jamerson</u>, 1 So.3d 827 (La. App. 2d Cir. 2009).  General intent may be inferred from the circumstance of the transaction and proved by direct or circumstantial evidence.  <u>State v. Brokenberry</u>, 942 So.2d 1209 (La. App. 2d Cir. 2006); <u>State v. Culp</u>, 17 So.3d 429 (La. App. 2d Cir. 2009).

The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La. 1982).

In this case, the trial transcript convincingly demonstrates that the evidence was more than sufficient to support the jury's verdict that Smith was a previously convicted felon in possession of a firearm.

At trial, only four (4) witnesses testified, all as part of the State's case.[31] Detective Claude Stevens testified that he initiated a traffic stop on the vehicle driven by Smith for driving in the rain without headlights.[32]   He called dispatch to check the license plate before pulling over the car.[33]   The car had been reported stolen.[34]   After the car was stopped, the detective met Smith at the rear of the car and arrested him.[35]   The detective advised Smith about the report that the car had been stolen and that the car would be towed away.  Upon questioning by the detective, Smith advised him that there was a weapon in the car.  He explained that it was his brother's gun, and it was located under the front seat.  Detective Stevens located the gun under the center front of the driver's

---

[31]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 26, 50, 65, 72, 6/22/04.

[32]Id., p. 27.

[33]Id.

[34]Id.

[35]Id., p. 29.

seat, easily within the driver's reach.[36]   Stevens subsequently placed the gun into an

evidence holding area at the Slidell Police Department and created a property record on

the computer system.[37]

Melissa Thompson, the police department evidence custodian, confirmed that the

gun was received from Detective Stevens and maintained in her custody until it was

presented at trial.[38]

Deputy James Folks,[39] a latent fingerprint expert for the State, testified that he

obtained fingerprints from Smith on the morning of trial.[40]   Folks compared these prints

to those appearing on the prior arrest register from the 1979 Orleans Parish forcible rape

case.[41]   He determined that Smith was the same person whose fingerprints appeared on

the prior arrest register.[42]   He also indicated that Smith's current records and the prior

---

[36]Id., pp. 30-31.

[37]Id., pp. 32, 34-36, 37.

[38]Id., pp. 65-67, 70.

[39]Although the prosecution referred to him as a "detective," Folks indicated that he was a deputy. Id., p. 53.

[40]Id., p. 56

[41]Id., pp. 57, 64.

[42]Id., pp. 57, 58, 61, 64.

arrest register contained the same birth date, Bureau of Identification number, and other common physical characteristics confirming them to be related to the same person.[43]

Finally, the jury heard the testimony of Felix Indest, a supervisor with the Louisiana Department of Corrections ("DOC"), Office of Probation and Parole.[44]  He researched and located Smith's criminal record through the Corrections and Justice Unified Network, also known as the CAJUN-II system.[45]  He retrieved DOC records establishing that Smith was sentenced on July 27, 1979 to serve a 25 year sentence for forcible rape.[46]  The DOC records matched the case number, dates, and offense found in the certified copies of the docket master and court records from Smith's 1979 criminal case in which he was convicted of forcible rape.[47]  Indest also determined that Smith's release date was July 26, 1995, when he was released on good-time credit which did not require a period of parole under the laws applicable to Smith.[48]

Thus, the evidence at trial established that Detective Stevens retrieved a gun located under the driver's seat of the car that Smith was driving.  The gun was within

---

[43]Id., pp. 59-60.

[44]Id., p. 72.

[45]Id., p. 73.

[46]Id., pp. 74-75.

[47]Id.

[48]Id., pp. 75-76.

Smith's reach, and Smith knew exactly where the gun was located.  The evidence also demonstrated that Smith completed his sentence on the forcible rape conviction with his good-time release on July 26, 1995.  The evidence therefore established that the felon in possession offense occurred on November 17, 2000, which was less than 10 years after Smith's completion of the sentence on the forcible rape conviction on July 26, 1995.

In spite of this evidence and testimony, Smith challenges the State's evidence, which he claims prove that he entered a plea in 1979 to sexual battery and not forcible rape.  The state records demonstrate that, on June 21, 1979, Smith was indicted for the May 22, 1979, aggravated rape.[49]  In anticipation of his plea, the indictment was amended on July 27, 1979, to forcible rape.  The statutory reference to La. Rev. Stat. Ann. § 14:43.1, rather than the phrase "forcible rape," was used on some of the clerk of court's minute and docket entries related to the plea.[50]

Forcible rape was at one time defined by La. Rev. Stat. Ann. § 14:43.1[51]  Shortly before Smith's plea, the Louisiana legislature relocated the definition of forcible rape to

---

[49]St. Rec. Vol. 1 of 3, Indictment for Aggravated Rape, 6/21/79.

[50]St. Rec. Vol. 1 of 3, Plea Minutes, 7/27/79; Docket Sheet Entry, 7/27/79.

[51]Id., handwritten amendment dated 7/27/99; See La. Rev. Stat. Ann. § 14:43.1, Historical and Statutory Notes (2007 Main Volume).

29

La. Rev. Stat. Ann. § 14:42.1 and re-designated La. Rev. Stat. Ann. § 14:43.1 to define sexual battery.  State v. Glynn, 388 So.2d 804, 805 (La. 1980).[52]

Although the state clerk of court's records may have contained typographical errors regarding the proper statutory reference, the fact remains that the State presented sufficient proof through other sources and testimony that Smith entered a guilty plea in 1979 to the amended offense of forcible rape, an enumerated felony sex offense,[53] for which he remained incarcerated until July 26, 1995.

In addressing Smith's prior federal habeas petition challenging the 1979 conviction itself in Civ. Action No. 93-3864"F"(6), Judge Feldman of this court stated:[54]

> As Smith notes, there is no longer a [transcript] of the state plea proceedings.  Notwithstanding the post-sentence minute entry citing the statute for sexual battery, the Court finds that the amended indictment with the words "forcible rape" is enough to place the burden upon Smith to show that he pleaded to something else.

The court went on to note that "[a]ll other evidence clearly points to the propriety of the original plea, but it does not constitute an actual record of it.  Every court that has had

---

[52]See  Louisiana Acts 1978, No. 239, § 1.

[53]I also note that under Sections 14:2(B)(12) and 15:541(24)(a), sexual battery is also an enumerated offense within the definitions of "sex offense" and "crime of violence."

[54]Civ. Action 93-3864"F"(6), Rec. Doc. No. 23, p. 3.

this issue before it has ruled that the post-sentence minute entry was a clerical error.  The testimony of Smith's prosecutor was unshaken on this issue."[55]

The same is true of the record and evidence presented in Smith's felon in possession case.  Other than his own argument, Smith has presented nothing firmly to establish that he entered a guilty plea to sexual battery.  The evidence and testimony has consistently pointed to a plea to forcible rape.

I find that the evidence of record, taken in a light most favorable to the prosecution, was sufficient to establish that Smith, having previously been convicted of the crime of forcible rape, was in possession of a firearm at the time of his arrest, which occurred less than 10 years after completion of his sentence on the forcible rape conviction.  The state court's denial of relief on this claim was not contrary to, or an unreasonable application of <u>Jackson</u>.  Smith is not entitled to relief on this claim.

## VIII.   <u>JURY INSTRUCTIONS (CLAIM NO. 5)</u>

Smith argues that the trial court denied him due process when it instructed the jury "that, no one that have (sic) been convicted of a felon (sic) is allowed to have a gun" because the State failed to prove that he was the same Virgil Smith who had previously been convicted of forcible rape.[56]  He contends that the State offered no photographs or

---

[55]<u>Id</u>., p. 3 n.1.

[56]Rec. Doc. No. 2, p. 6.

31

fingerprints to prove his past conviction.[57]  Smith raised this claim in his post-conviction application to the state trial court, and each of the state courts denied relief on the claims as meritless.

To establish a constitutional error arising from the language of a jury charge, a petitioner must prove that the instructions, read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in In re Winship, 397 U.S. 358 (1970).  See Francis v. Franklin, 471 U.S. 307 (1985).  Only if the instructions were so unfair as to rise to the level of a constitutional violation would federal habeas relief be appropriate.  Gilmore v. Taylor, 508 U.S. 333, 343-44 (1993).

In this case, Smith has failed to point to any specific error in the instructions given by the state trial court.  When a state prisoner attacks a jury instruction given by the state court in the course of his criminal prosecution, he bears a particularly heavy burden to establish that the alleged infirm instruction "by itself so infected the entire trial that the resulting conviction violates due process."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).  The burden of proof is on the petitioner to prove both the error and the constitutional violation.  Cupp v. Naughten, 414 U.S. 141, 146 (1973).  Smith has failed

---

[57]Id.

to meet the initial burden of establishing any error in the state trial court's jury instructions.

Construing his argument broadly, Smith suggests that the state trial court erred in charging the jury on the definition of the crime of felon in possession of a firearm where the evidence was insufficient to prove the prior felony element of that charge. As discussed previously in this report, the evidence at trial was more than sufficient to establish each element of the felon in possession of a firearm offense, including Smith's 1979 felony conviction. Where the criminal charge is supported by the evidence, due process requires that the instruction be given to the jury. Accord, Hopper v. Evans, 456 U.S. 605, 611 (1982) (due process would not require that a charge unsupported by the evidence be given to the jury); United States v. Ortego, 859 F.2d 327, 330 (5th Cir. 1988) (same). The state trial court, therefore, did not err in instructing the jury on the offense for which he was charged and which was proven at trial.

The state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of Supreme Court precedent. Smith is not entitled to relief on this claim.

IX. ASSISTANCE OF COUNSEL (CLAIM NOS. 7 AND 9)

Smith alleges that his counsel provided ineffective assistance because he failed to present mitigating evidence during sentencing, investigate whether the charges were

properly instituted against him, and impeach a detective who testified at trial by using prior testimony.  Smith raised these arguments in his application for post-conviction relief, which was denied as meritless by the state courts.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for evaluating performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test concerning claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim

34

based solely on a petitioner's failure to meet either prong of the test.  <u>Kimler</u>, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.'  It is not enough under <u>Strickland</u>, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'"  <u>Motley v. Collins</u>, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting <u>Strickland</u>, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance."  <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999) (citing <u>Strickland</u>, 466 U.S. at 689-90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  <u>Strickland</u>, 466 U.S. at 689; <u>Neal v. Puckett</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227 F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under <u>Strickland</u>, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best

practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

>        The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466

U.S. at 689; <u>Moore v. Johnson</u>, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  <u>Id</u>.

A.    <u>Failure to Investigate and Present Mitigating Factors at Sentencing</u>

Smith alleges that his counsel was ineffective for failing to investigate and present "significant" evidence of mitigation.  He does not expound on this argument or point to any specific mitigating evidence which could have been discovered or should have been presented by counsel.

It is well established that counsel has "a duty to make reasonable investigations" into potential mitigating evidence or "to make a reasonable decision that makes particular investigations unnecessary." <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (addressing sentencing in capital cases) (quoting <u>Strickland</u>, 466 U.S. at 691).  Thus, "defense counsel's failure to engage in an appropriate investigation of potential mitigating evidence in the punishment phase can support a claim of ineffective assistance of counsel." <u>Smith v. Cockrell</u>, 311 F.3d 661, 668-69 (5th Cir.2002) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 390).  In determining whether trial counsel's performance was deficient, courts must "focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [a petitioner's] background was <u>itself</u> <u>reasonable</u>." <u>Id</u>., 539 U.S. at 522-23 (emphasis in original).

However, the Supreme Court also has emphasized that "Strickland does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing," nor "does Strickland require defense counsel to present mitigating evidence at sentencing in every case." Wiggins, 539 U.S. at 532-533. Rather, Strickland requires counsel to ensure that the decision to limit investigations is supported by "reasonable professional judgment." Id.

At the outset, however, the burden is on Smith to establish that counsel erred in failing to investigate mitigating evidence. "'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted) (emphasis added). A petitioner cannot show prejudice with respect to a claim that counsel failed to investigate and present mitigating evidence without adducing what the investigation would have shown. Diaz v. Quarterman, 239 Fed. Appx. 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696 in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").

In this case, Smith has not pointed to any potential mitigating evidence which should have been discovered or investigated by counsel. He also has not alleged what,

38

if any, information a more thorough search of his background would have revealed or how any such information would have altered the sentence he received. His vague and unsupported claim alone is not sufficient to establish a deficiency in counsel's performance or any prejudice resulting from counsel's representation. See Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005).

The state courts' denial of relief on this claim was neither contrary to nor an unreasonable application of Supreme Court precedent. Smith is not entitled to relief on this claim.

B.    Failure to Investigate Re-Institution of the Charge

Smith alleges that his counsel failed to investigate re-institution of the charges against him before trial. Smith does not expound on this claim or explain the basis for his assertion that counsel acted ineffectively in this regard.

As mentioned above, the record indicates that, before trial, counsel made an oral motion to quash the indictment on grounds that the charge was not timely instituted after it had been refused by the district attorney's office.[58] The state trial court denied the motion, finding that the matter was timely proceeding to trial.[59] The Louisiana trial, appellate, and state supreme courts all later upheld their own jurisdiction and the validity

---

[58]St. Rec. Vol. 3 of 3, Trial Transcript, p. 19, 6/21/04.

[59]Id., p. 21.

39

of the bill of information on post-conviction review, finding Smith's untimely institution argument without merit.[60]

The record as a whole demonstrates that Smith's counsel investigated and challenged the re-institution of the charges against him arguing the pretrial motion to quash. To the extent that Smith may intend to argue that counsel should have investigated differently or more thoroughly, he has not demonstrated what such an effort would have revealed, how the failure to do so prejudiced him, or how it would have changed the rulings made by the state courts. <u>Moawad</u>, 143 F.3d at 948. Without such a showing, he has failed to satisfy either prong of <u>Strickland</u>. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>. Smith is not entitled to relief on this claim.

C.      <u>Failure to Impeach the State's Witness</u>

Smith alleges that counsel failed to use prior testimony to impeach "a detective" at trial. He does not specify the witness or testimony to which he refers. Nevertheless, Smith has not demonstrated that counsel's cross-examination strategy was deficient or prejudicial.

A review of the trial transcript shows that Smith's counsel thoroughly cross-examined the state's witnesses, except for Felix Indest. Counsel thoroughly questioned

---

[60]<u>See</u> Section VI of this Report and Recommendation, p. 20.

Officer Stevens about the circumstances surrounding his decision to conduct a traffic stop of the car Smith was driving.  He also questioned him about the voluntariness of Smith's statement revealing that a gun was located in the car.  Counsel also questioned Stevens about the timing of the stolen property charges initially urged against Smith and his wife and whether they were dropped.  Counsel even questioned Stevens about his interaction with Smith's wife during the stop and arrest.  Counsel apparently sought to create doubt as to the legality of the stop and the truthfulness of the officer's reporting.

Counsel also cross-examined Deputy Folks about the reliability and accuracy of fingerprint comparisons, in an apparent effort to persuade the jury that identification of Smith as the prior felon was insufficient.  He also questioned Melissa Thompson about the chain of evidence with regard to the weapon and its veracity as evidence.

Although Smith's counsel chose not to question Felix Indest, Smith has failed to show an inconsistency in Indest's testimony to which counsel should have directed cross-examination.  Indest was a supervisor for the Louisiana Office of Probation and Parole who presented the CAJUN II records showing that Smith served a sentence for forcible rape and was released on July 26, 1995, on accumulated good-time credits which did not require at the time that he be released as if on parole.[61]  Indest also testified that his records from CAJUN II matched the case number and charge of forcible rape from the

---

[61]St. Rec. Vol. 3 of 3, Trial Transcript, pp. 72-76, 6/22/04.

records in the 1979 conviction.  As discussed above, the indictment in the 1979 case was in fact amended from aggravated rape to forcible rape on the day of the guilty plea. Smith has not pointed to any error by counsel or prejudice from his decision not to question Indest on the matters established in the Louisiana DOC records.

Smith has not demonstrated either prong of the <u>Strickland</u> test as it relates to counsel's decisions regarding cross-examination of the state's witnesses.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  Smith is not entitled to relief on this claim.

X.    <u>"VINDICTIVE" PROSECUTION (CLAIM NO. 10)</u>

Smith has labeled his tenth ground for relief "vindictive prosecution."  Construed broadly, however, his claim of prosecutorial misconduct may assert either vindictive or selective prosecution.  Considering his submissions both in this court and in state court and the applicable law, petitioner fails sufficiently to make either claim.

In support of this claim, Smith alleges that the State sought his wrongful conviction because the prosecutor knew that Smith had previously sued him.  Record Doc. No. 2, p. 10.  Because of the perfunctory nature of the allegations contained in his claim in this court, I have reviewed and relied upon the more extensive description of this claim asserted in his application for post-conviction relief filed in state court in 2006. Smith alleged that he was wrongfully prosecuted in retaliation for his lawsuits against

42

"the police department" and "the Sheriff" and his motion to recuse Judge Larry J. Green. State Record Vol. 1 of 3, Application for Post Conviction Relief, November 13, 2007, Claim No. 10, pp. 2, 12.  Petitioner stated that he appeared in court before Judge Green on February 11, 2003, facing two counts of public intimidation after his arrest for being a previously convicted felon in illegal possession of a firearm.  Id. at 1.  He alleged that during his appearance, prosecutor James E. Burke, III, informed the court that Smith was awaiting trial on his gun charge.  Id.  Smith claims he attempted to explain that the gun charge had been dismissed, but was told by Judge Green not to continue further.  Id.

Smith alleged that he appeared before Judge Donald M. Fendlason on August 11, 2003, in an attempt to have Judge Green recused.  Id. at 2.  Assistant District Attorney Scott C. Gardner was present and allegedly stated that he was there as Judge Green's representative.  Id.  Smith claims Gardner should have been barred from representing Judge Green, because "the state cannot represent the state."  Id.  Smith contends Gardner was present to obtain information about his suits and to add the gun charge to the record. Id.  Smith alleged that he tried to explain again that the gun charge was "refusal,"[62] but Judge Fendlason added it to the record, telling Smith it was "not really a new charge." Id.  Smith believes it was added because of the recusal motion and that it was "obvious"

---

[62]When read in context, Smith appears to mean "dismissed."

that Judge Fendlason was colluding with Gardner because of his efforts to have Judge Green recused. Id. at 14.

Smith states that the judge told him to answer Gardner's questions, who asked if he had ever sued Judge Green. Id. at 3. Gardner asked if he himself was being sued by Smith. Id. Petitioner answered affirmatively, and avers he was consequently taken to trial on June 22, 2004. Id. at 4. There, petitioner claims Gardner lied about the recusal hearing, saying he did not recall being there as Judge Green's representative. Id. He alleged that the judge and Gardner subsequently used a police department printout to add to the record that Smith had raped and murdered a woman. Id. at 4-5. Smith alleges that Gardner lied about the charge under oath. Id. at 6. Petitioner states the document did not use the word "rape." Id. at 7. The printout lists petitioner's charges as two counts of terrorizing, one count of 2nd degree battery and one count of 1st degree murder. Id. Petitioner argues that Gardner was attempting to create a criminal history using charges for which he was never convicted. Id.

A prosecution is vindictive when the prosecutor increases the severity or brings additional charges against a defendant to punish him for the exercise of his procedural rights. Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998); United States v. Ward, 757 F.2d 616, 619-20 (5th Cir. 1985); United States v. Butterworth, 693 F.2d 99, 101 (9th Cir. 1982) (citation omitted). Defendant must show actual vindictiveness by the prosecution,

44

exceeding the motive merely to prosecute the crime committed.  Ward, 757 F.2d at 620.

Defendant may create a "presumption of unconstitutional prosecutorial vindictiveness"

only by showing the "substantial and realistic likelihood" of a punitive motive.  Id. at

619.  Bare allegations of vindictive prosecution are not sufficient to support a claim.

United States v. Lacey, 91 Fed. Appx. 939, 2004 WL 413215 at *1 (5th Cir. Mar. 3,

2004) (citing Neal, 141 F.3d 207 at 214).

Selective prosecution arises when a defendant is selected for prosecution based on

an "unjustifiable standard," such as race, religion or the "exercise of protected statutory

and constitutional rights."  Wayte v. United States, 470 U.S. 598, 608 (1985) (citation

omitted).  Defendant has the heavy burden of establishing (1) prima facie that he has

been "singled out" while other individuals have not been prosecuted for similar conduct,

and (2) his selection by the prosecution in "bad faith."   United States v. Naranjo-

Arellano, 158 F.3d 583, 1998 WL 648484 at *2 (5th Cir. Sep. 1, 1998) (citing United

States v. Sparks, 2 F.3d 574, 580 (5th Cir. 1993); United States v. Collins, 972 F.2d

1385, 1397 (5th Cir. 1992) (citing United States v. Ramirez, 765 F.2d 438, 439 (5th Cir.

1985), cert. denied, 474 U.S. 1063 (1986)); United States v. Marcello, 508 F. Supp. 586,

595 (E.D. La. 1981) (citing United States v. Johnson, 577 F.2d 1304, 1308 (5th Cir.

1978); United States v. Kahl, 583 F.2d 1351, 1353 (5th Cir. 1978)).  If the prosecutor has

probable cause to believe defendant violated a given statute, the decision whether or not

to prosecute "generally rests entirely in his discretion." Wayte, 470 U.S. at 608. Prosecutors "have wide latitude" to determine whom to prosecute and "[t]he mere existence of some selectivity . . . is not per se constitutionally prohibited" as singling a defendant out. Ramirez, 765 F.2d at 440.

Prosecutions are "generally presumed to have been undertaken in good faith and non-discriminatorily." Marcello, 508 F. Supp. at 595 (citation omitted). A bad faith prosecution is one "actuated by constitutionally impermissible motives," such as "the desire to prevent the exercise of constitutional rights." Ramirez, 765 F.2d at 439-40; Marcello, 508 F. Supp. at 595. Defendant must additionally show the prosecution occurred "at least in part because of" and not merely "in spite of" defendant's race, religion, or exercise of constitutional rights. Wayte, 470 U.S. at 610 (citation omitted) (emphasis added); Ramirez, 765 F.2d at 440 (citation omitted). "Conclusional allegations" are not sufficient to show an invidious prosecutorial motive. Ramirez, 765 F.2d at 440.

Both vindictive and selective prosecution are claims of prosecutorial misconduct that must be evaluated under plain error analysis to determine if the alleged violations "seriously affected the fairness, integrity, or public reputation of judicial proceeding and resulted in a miscarriage of justice." United States v. Goff, 847 F.2d 149, 162 (5th Cir. 1988), cert. denied, 488 U.S. 932 (1988) (citing United States v. Livingston, 816 F.2d

46

184, 195 (5th Cir. 1987)).  Smith, in this case, has not established a violation of due process or that his trial was unfair under the foregoing standards.

In this case, Smith has failed to establish that the prosecution was "vindictive" or "selective."  Smith alleges he was <u>tried</u> on June 22, 2004, because of his lawsuits and recusal motion. State Record Vol. 1 of 3, Application for Post Conviction Relief, November 13, 2007, Claim No. 10, p. 4.  Smith does not allege that the severity of the charges against him increased because he exercised his litigation rights.  Instead, Smith argues that past history was "added to the record" and the prosecution fabricated his criminal history.  <u>Id.</u> at 2, 7.  Petitioner claims the prosecution attempted to add a nonexistent rape charge to his record, when his past record already included a guilty plea and conviction for forcible rape and charges of 1st degree murder, 2nd degree battery and terrorizing. <u>Id.</u> at 7; State Record Vol. 1 of 3, Statement of the District Attorney, Case No. 270-776, Section "B," July 29, 1979.  The likelihood that the prosecution would add a second rape charge to petitioner's record or that his position as a litigant would be substantially harmed when his criminal record already included crimes like murder, battery and terrorizing is neither substantial nor realistic. Even taking petitioner's statements as true, Smith must make more than "bare allegations." <u>Lacey</u>, 91 Fed. Appx. 939 at *1.  Petitioner offers only conjecture as to the motives of Gardner and Judges

Green and Fendlason.  His allegations are therefore insufficient to support a claim of vindictive prosecution.

Smith's allegations also fail to meet the heavy burden that must be sustained to state a claim of selective prosecution.  First, petitioner never claims that he was singled out, as he must be for the claim to go forward.  Even assuming he made such a claim, it would fall below the requisite prima facie standard.  Prosecutors are given wide discretion to try those whom they have probable cause to believe have violated the law. Wayte, 470 U.S. at 608.  Smith was convicted of forcible rape in 1979, released in 1995 and found in possession of a firearm during a traffic stop in 2000.  Louisiana v. Smith, 2005 KA 0164 at *1-4 (La. Ct. App. Nov. 4, 2005).  The prosecution had more than sufficient probable cause to believe that Smith was a previously convicted felon in illegal possession of a firearm and to prosecute him for that offense.

Smith claims the prosecution acted in bad faith; that he was tried, not for his crimes, but as a punishment for filing his lawsuits and recusal motion.  State Record Vol. 1 of 3, Application for Post Conviction Relief, November 13, 2007, Claim No. 10, p. 4. However, his allegations are not sufficient to overcome the presumption of a good faith prosecution.  Smith offers only his self-serving belief that the prosecution was retaliatory. Such speculation, unsupported by credible evidence, is entirely insufficient to establish a claim of unconstitutional selective prosecution.  This claim is without merit.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Virgil L. Smith for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[63]

New Orleans, Louisiana, this ___5th___ day of August, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[63]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.